**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

v.                                                    CRIMINAL ACTION NO. 2:25-cr-00142

CORNELL CORDON

**MEMORANDUM OPINION AND ORDER**

On May 7, 2026, the court held a sentencing hearing for Defendant Cornell Cordon. At the hearing, the parties presented opposing arguments regarding the appropriate base offense level for the calculation of Defendant's advisory Guidelines range. For the reasons that follow, I find that Defendant's prior criminal conviction establishes him as a Tier III sex offender under the advisory Guidelines.

**I.      BACKGROUND**

On October 14, 2025, law enforcement executed an arrest warrant against Defendant following the return of a single-count Indictment against Defendant by a federal grand jury. The Indictment charged Defendant with traveling in interstate or foreign commerce and knowingly failing to register and update his registration as a person required to register under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18. U.S.C. § 2250(a). [ECF No. 2]. On January 8, 2026, Defendant pleaded guilty to the charged offense. [ECF No. 25].

At the sentencing hearing, the court considered whether Defendant should be classified as a Tier I or Tier III sex offender under the advisory Guidelines. Central to this inquiry is the

underlying state statute for which Defendant was originally convicted of a sex crime that required him to register as a sex offender.

On July 17, 2019, Defendant pleaded guilty to violating West Virginia Code § 61-8B-7, first degree sexual abuse. The Government argues that this statute is divisible and thus comparable to offenses that fall under a Tier III designation. [ECF No. 29, at 1]. Conversely, the United States Probation Officer asserts that the statute is indivisible and as such, it is broader than the Tier III offenses, necessitating a Tier I classification by default. At the May 7, 2026, sentencing hearing, Defendant also objected and argued that Defendant should be classified as a Tier II sex offender for Guidelines purposes.

## II.    LEGAL STANDARD

The United States Sentencing Commission provides advisory Guidelines to facilitate district courts' sentencing determinations. Despite the Guidelines, "district courts are not obligated to conduct formulaic sentencings." *United States v. Shields*, 779 F. Supp. 3d 774, 780 (S.D. W. Va. 2025) (Goodwin, J.). Instead, a sentence may be imposed above, below or within the calculated Guidelines range, and sentencing decisions are reviewed for substantive and procedural reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Substantive reasonableness concerns "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* Relatedly, "the standard for procedural reasonableness considers whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *Shields*, 779 F. Supp. 3d at 780 (citation modified). For procedural reasonableness, the court also "must place on

2

the record an 'individualized assessment' based on the particular facts of the case before it." *United States. v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (quoting *Gall*, 552 U.S. at 50)).

## III.   DISCUSSION

The issue before the court is the proper calculation of Defendant's Guidelines sentencing range. Specifically, the parties dispute whether Defendant qualifies as a Tier I, II, or III sex offender under SORNA for purposes of determining the applicable base offense level. The Government argues that Defendant should be considered a Tier III sex offender, which corresponds to a base offense level of 16 under the Guidelines. Defendant, however, argues that he qualifies as a Tier II sex offender, which carries a base offense level of 14. For the reasons set forth below, I **FIND** that Defendant falls under the Tier III classification, and the applicable base offense level is 16.

### A.   The Categorical and Modified Categorical Approaches

SORNA, 34 U.S.C. § 20901 *et seq.*, establishes a comprehensive federal system for the registration of individuals convicted of qualifying sex offenses. The statute creates three tiers under which a sex offender may be classified depending on the nature of their conviction. "To determine a defendant's tier classification, courts compare the defendant's prior sex offense conviction with the offenses listed in SORNA's tier definitions." *United States v. Berry*, 814 F.3d 192, 195 (4th Cir. 2016); 34 U.S.C. § 20911(2)-(4).

In conducting this inquiry, federal courts first apply either the categorical approach or the modified categorical approach and only in narrow instances, the circumstance-specific approach to complete the assessment. *Id.* at 195, 197. "The categorical approach focuses solely on the relevant offenses' elements, comparing the elements of the prior offense of conviction with the elements of the pertinent federal offense, also referred to as the 'generic' offense." *Id.* (citing

*United States v. Price*, 777 F.3d 700, 704 (4th Cir. 2015)). There is a categorical match if the prior crime's "elements are the same as, or narrower than, those of the generic offense." *Mathis v. United States*, 579 U.S. 500, 503 (2016). However, if the elements of the prior conviction are broader, "such that there is a 'realistic probability' that the statute of the offense of prior conviction encompasses conduct outside of the offense enumerated in the federal statute, the prior offense is not a match." *Berry*, 814 F.3d at 195 (quoting *Price*, 777 F.3d at 704); *see also Descamps v. United States*, 570 U.S. 254, 261 (2013).

The modified categorical approach, rather than the categorical approach, is the appropriate initial mode of analysis where the statute of conviction is "divisible," meaning that it "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257, 261–62. This approach is a "tool for implementing the categorical approach," *id.* at 262, when a single statute effectively defines multiple crimes by listing elements in the alternative. *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009). "Because a sentencing court cannot tell, simply by looking at a divisible statute, which version of the offense a defendant was convicted of," *Descamps*, 570 U.S. at 255 (citing *Nijhawan*, 557 U.S. at 29), the modified categorical approach provides sentencing courts with a means of determining which of the alternative elements listed "was integral to the defendant's conviction," *Mathis*, 579 U.S. at 505.

Specifically, the modified categorical approach allows courts "to consult a limited menu of so-called *Shepard* documents, such as the indictment, the plea agreement, and jury instructions, to 'determine which alternative formed the basis of the defendant's prior conviction.'" *Berry*, 814 F.3d at 196 (quoting *Descamps*, 570 U.S. at 257) (citing *Shepard v. United States*, 544 U.S. 13, 24–26 (2005)). Once the court clarifies which alternative was relied upon in the defendant's underlying conviction, the court proceeds with the inquiry by using the categorical approach to

compare the offenses' elements. *Id.*; *Descamps*, 570 U.S. at 264 ("That is the job . . . of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.").

### 1.    *Analyzing Statutes in the Alternative*

Critically, the trigger for employing the modified categorical approach is the presence of alternative elements—as opposed to alternative factual means of commission. *Descamps*, 570 U.S. at 264 (explaining that extra-statutory materials may only be reviewed when a statute of conviction defines an offense alternatively, not overbroadly); *Mathis*, 579 U.S. at 504–07, 517. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 579 U.S. at 504 (quoting Black's Law Dictionary 634 (10th ed. 2014)). A jury must make findings for elements beyond a reasonable doubt, and "at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.* (cleaned up). Differing factual means of commission, however, "need neither be found by a jury nor admitted by a defendant." *Id.* They are "extraneous to the crime's legal requirements." *Id.*

The Supreme Court of the United States has set forth several ways for sentencing courts to determine whether a statute sets forth alternative elements or factual means. First, courts should examine whether the state's highest court has expressly labeled statutory alternatives as elements or means. *Id.* at 517–18. Second, the statute itself may be instructive where alternatives carry different punishments because under *Apprendi* they must be elements as jurors must agree on circumstances that increase penalties. *Id.* at 518 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Similarly, "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (quoting *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)). Third, the statute might also indicate which items must be charged and which

must not, thus differentiating between elements and means. *Id.* Where there remains uncertainty after consulting state law, federal courts may additionally examine the underlying record of conviction for the narrow purpose of resolving whether the statute lists alternative elements or means. *Id.* (citing *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (Kozinski, J., dissenting)).

#### 2.    *Application*

Accordingly, the task of the sentencing court is to assess a statute of conviction and if it contains alternatives, the court must decipher whether those alternatives are elements or merely different factual means of commission. *Descamps*, 570 U.S. at 264–65; *Mathis*, 579 U.S. at 517. If the statute contains alternative elements, the court is permitted to consult *Shepard* documents to determine "the crime of conviction so that the court can compare it to the generic offense." *Descamps*, 570 U.S. at 264; *Berry*, 814 F.3d at 196. The emphasis remains "on the elements, rather than the facts, of a crime." *Descamps*, 570 U.S. at 263. However, if the alternatives are instead "means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution" before making a comparison to the generic offense. *Mathis*, 579 U.S. at 517.

Here, state law, the statutory text, and materials from the underlying conviction indicate that the state statute at issue, West Virginia Code § 61-8B-7, contains alternative elements. The code states, in pertinent part:

(a) A person is guilty of sexual abuse in the first degree when:

(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or

(2) Such person subjects another person to sexual contact who is physically helpless; or

(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old.

§ 61-8B-7(a)(1)–(3). Subsection (b) sets forth a felony penalty of 1 to 5 years of imprisonment for violations of the statute, and subsection (c) provides an enhanced penalty of 5 to 25 years "for any person violating the provisions of subsection (a) of this section who is eighteen years of age or older and whose victim is younger than twelve years of age."

Notably, the Supreme Court of Appeals of West Virginia ("SCAWV") has upheld the treatment of § 61-8B-7 as containing alternative elements that create different offenses. In *Slaughter v. Frame*, the court confronted whether state law required the petitioner to register as a sex offender in West Virginia based on his out-of-state conviction. No. 23-671, 2025 WL 2614469, at *1 (W. Va. Sep. 10, 2025). State law "mandates registration by any person with an out-of-state conviction that requires proof of the same essential elements." *Id.* at *2. The SCAWV upheld the lower court's conclusion that the out-of-state conviction "is essentially the same as the *offense* set forth in West Virginia Code § 61-8B-7*(a)(3)*." *Id.* (emphasis added); *see also State v. Vigil*, No. 22-0295, 2024 WL 2894770 (W. Va. June 10, 2024) (reviewing the sufficiency of the evidence for a conviction pursuant to § 61-8B-7(a)(3)). In *State v. Smith*, the court affirmed the lower court's decision and defendant's conviction under § 61-8B-7(a)(1). 225 W. Va. 706, 707–09; 696 S.E.2d 8, 9–11 (2010).

Therefore, opinions from the state's highest court confirm that the statute's alternatives are elements that a jury must find beyond a reasonable doubt or that a defendant necessarily pleads guilty to. The statute itself further supports that it contains elements because it does not merely list "illustrative examples" of how to commit first degree sexual abuse. *Howard*, 742 F.3d at 1348. Rather, it lists alternative elements that are effectively multiple offenses that constitute first degree sexual abuse. There is also an enhanced penalty that requires specific factual findings. Moreover, a "peek at the [state court] documents," *Rendon*, 782 F.3d at 473–74, confirms that the statutory

7

alternatives are elements because the grand jury indictment states that Defendant "being fourteen (14) years of age or more . . . did unlawfully and feloniously subject [victim], who was younger than twelve (12) years of age . . . to sexual contact . . . ." [State Indictment, Case No. CC-40-2018-F-94]. This is clearly an indictment based on § 61-8B-7(a)(3), and Defendant was subject to the enhanced penalty under subsection (c) at his sentencing. *See Mathis*, 579 U.S. at 519 ("[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.").

Because § 61-8B-7 lists alternative elements rather than factual means, the modified categorical approach is the appropriate starting point for the comparison inquiry. As previously noted, the *Shepard* documents reveal that Defendant pleaded guilty to § 61-8B-7(a)(3). Having determined the alternative that formed the basis for Defendant's conviction, "the examination of any *Shepard* documents ends, and the court proceeds with employing the categorical approach, comparing the elements of the offense of conviction with the elements of the offense identified in the federal statute." *Berry*, 814 F.3d at 196.

The Government contends that Defendant should be classified under Tier III because the generic federal offense matching his state conviction falls within the Tier III definition. [ECF No. 29, at 2]. Specifically, the Tier III statute provides:

> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and--
>
> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
>
> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
>
> (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;

8

(B) involves kidnapping of a minor (unless committed by a parent or guardian); or

(C) occurs after the offender becomes a tier II sex offender.

34 U.S.C. § 20911(4). The Government argues that West Virginia Code § 61-8B-7(a)(3) is comparable to or more severe than 34 U.S.C. § 20911(4)(A)(ii): abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years. [ECF No. 29, at 3]. Specifically, the Government states that the generic federal offense can be found at 18 U.S.C. § 2244(a)(5), which provides that "Whoever . . . knowingly engages in or causes sexual contact with or by another person, if so to do would violate . . . subsection (c) of section 2241 of this title had the sexual contact been a sexual act, shall be fined . . . imprisoned . . . or both." *See* 18 U.S.C. § 2241(c) ("Whoever . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years."); *see also* 18 U.S.C. § 2246(2).

Defendant's statute of conviction—specifically § 61-8B-7(a)(3)—is comparable to or more severe than the generic federal offense of abusive sexual contact as described in 18 U.S.C. § 2244.[1] *Berry*, 814 F.3d at 195 ("If the elements of the prior offense 'are the same as, or narrower than,' the offense listed in the federal statute, there is a categorical match."(quoting *Descamps*, 570 U.S. at 257)). In this inquiry, the court compares the elements. The state statute provides: "(a) A person is guilty of sexual abuse in the first degree when: (3) Such person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old." W. Va. Code § 61-8B-7(a)(3).

Both the underlying offense and the federal offense provide for a violation upon "sexual contact." The underlying state offense refers to one who "subjects another person to sexual

---

[1] As an initial matter, punishment under the state statute provides for a term of imprisonment greater than 1 year in this case, which meets the § 20911(4) requirement for a Tier III designation.

contact," while the federal offense provides for one who "knowingly engages in or causes sexual contact with or by another person." The state definition for "sexual contact" in place at the time of Defendant's 2019 conviction stated:

> "Sexual contact" means any intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

W. Va. Code § 61-8B-1(6) (2007) (amended 2024). The federal definition for sexual contact has remained the same and states: "'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Both offenses provide for sexual contact, which under both statutes, means intentional touching. Both offenses are comparable in the type of sexual touching that constitutes sexual contact. Moreover, in addition to the intent component for touching, both offenses include an act done for the purpose of gratifying the sexual desire of another. In this regard, the state statute is narrower because the federal statute includes more purposes and for the act to be done for the sexual gratification of any person. However, under the categorical approach, the requirements of the underlying offense may be narrower than the generic federal offense. *Berry*, 814 F.3d at 195.

The state statute is narrower in four other ways, as well. First, the federal offense provides for a victim younger than 13 years old while the state offense dictates a victim younger than 12 years old. Second, the federal offense does not set forth an age threshold for offenders while the state offense provides for a person who is fourteen years old or more. Third, the federal offense also includes "sexual contact . . . had the sexual contact been a sexual act." 18 U.S.C. § 2244(a)(5).

10

Yet, "sexual act" as defined under 18 U.S.C. § 2246(2) is broader than the meaning of "sexual contact" under the state statute. Last, § 2244(a)(5), provides that "Whoever . . . knowingly engages in or causes sexual contact with *or by another person* . . . ." (emphasis added). The federal offense contemplates an offender who possibly causes another to make sexual contact, which is broader than the state statute. Again, the state offense can be narrower than the federal offense and still categorically match—it just cannot "sweep more broadly, such that there is a realistic probability that the statute of the offense of prior conviction encompasses conduct outside of the offense enumerated in the federal statute . . . ." *Berry*, 814 F.3d at 195 (citation modified). Based on this assessment, I conclude that there is a categorical match between the state offense of conviction and the federal offense.

##### B.    The Circumstance-Specific Approach

The Court of Appeals for the Fourth Circuit has found that the statutory text of Tier III in § 20911(4) "instructs courts to apply the categorical approach when comparing prior convictions with the generic offenses listed except when it comes to the specific circumstance of the victims' ages." *Id.* at 197 (citing *United States v. White*, 782 F.3d 1118, 1134 (10th Cir. 2015)). Given the Tier III definition providing for a victim "who has not attained the age of 13 years," § 20911(4)(A)(ii), the Fourth Circuit stated that "Congress intended courts to apply a categorical approach" to compare the underlying and federal offenses, "but to employ a circumstance-specific comparison for the limited purpose of determining the victim's age." *Berry*, 814 F.3d at 197 (citation modified).

The circumstance-specific inquiry "refer[s] to the specific way in which an offender committed the crime on a specific occasion." *Nijhawan*, 557 U.S. at 34. In other words, the circumstance-specific approach permits the sentencing court to inquire into the underlying case to

ensure that the defendant's conviction involved a victim meeting the age threshold set forth in the federal statute. Here, state materials indicate that Defendant's underlying conviction involved sexual contact with a 2-year-old. This meets the Tier III provision requiring a victim who has not turned 13 years old.

## IV.    CONCLUSION

Accordingly, I **FIND** that there is a categorical match between the underlying state offense and the federal offense, and the circumstance-specific inquiry is also met. Given this match, Defendant qualifies as a Tier III sex offender, and his base level offense is 16. The Government's objection to the Presentence Report is **SUSTAINED**, Defendant's objection is **OVERRULED**, and the U.S. Probation Officer is **DIRECTED** to file an amended Presentence Report under seal.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        May 7, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

12